IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 96-40133

Summary Calendar

---

BILLIE DORIS MALLORY,
Individually and On Behalf of
the Estate of L.A. MALLORY,
Deceased,

Plaintiff-Appellant,

versus

ALL AMERICAN LIFE INSURANCE
COMPANY, A U.S. LIFE COMPANY,

Defendant-Appellee.

---

Appeal from the United States District Court
For the Eastern District of Texas
(6:94-CV-841)

---

August 8, 1996

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

This is a diversity case from the Eastern District of Texas. The question is whether an insurance policy provision covering injuries suffered "while riding in, boarding on, exiting from or being struck by . . . [a] land . . . transport vehicle which the insured has not been hired to run" covers a hunting accident which

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

occurred aboard a four-wheel all-terrain vehicle. A reading of "land transport vehicle" to include a four-wheel all-terrain vehicle would render another section of the contract superfluous and the operative language appears in a section entitled "Common Carrier Coverage." We find no coverage and affirm for essentially the reasons stated by Judge Hannah.

Decedent L.A. Mallory died as a result of a gunshot wound to the chest while operating a four-wheel all-terrain vehicle alone on a private hunting lease in the State of Colorado. Appellee insurer paid appellant $100,000 in accordance with the "Twenty-Four Hour Accident Coverage" section of the insurance policy. Appellant claims she is entitled to an additional $100,000 under the language of the "Common Carrier Coverage" section quoted above. She appeals from the district court's grant of appellee's motion for summary judgment and its denial of her motion for summary judgment.

In Texas, a contract of insurance, like other contracts, "is interpreted as a whole, and all writings that are a part of the same transaction are interpreted together." Restatement (Second) of Contracts § 202(2) (1981); United American Insurance Company v. Selby, 338 S.W.2d 160, 164 (Tex. 1960). While a broad reading of "land transport vehicle" includes a four-wheel all-terrain vehicle, when the contract is taken as a whole, "land transport vehicle" takes on a more refined meaning.

A provision in an insurance contract should not be read so as to render other insuring provisions ineffective or meaningless.

<u>Martindale Lumber Co. v. Bituminous Casualty Corp.</u>, 625 F.2d 618, 623 (5th. Cir. 1980); <u>Bright v. New York Life Insurance Co.</u>, 546 S.W.2d 145 (Tex. Civ. App.--Corpus Christi 1977, writ ref'd n.r.e). If we read "land transport vehicle" to include a four-wheel all-terrain vehicle, as appellant urges, at least two other parts of the contract become meaningless. First, the "Private Passenger/Pedestrian Coverage" section is rendered superfluous. An understanding of "land transport vehicle" which includes a four-wheel all-terrain vehicle also includes a private passenger car--both are vehicles which transport people across land. The "Private Passenger/Pedestrian Coverage" section provides $100,000 for injuries "suffered when getting into, out of, driving, riding in, or being struck by a private passenger car"; the "Common Carrier Coverage" section provides $200,000. The contract states that "[i]f more than one Hazard applies to any one accident, only the Hazard with the largest principal sum amount will be paid." Thus anyone with a $100,000 claim under the "Private Passenger/Pedestrian Coverage" section would have a concomitant $200,000 "Common Carrier Coverage" claim. The parties did not intend such a reading.[1]

---

[1]The "Twenty-Four Hour Accident Coverage" section admittedly renders the "Private Passenger/Pedestrian Coverage" section superfluous no matter how the "Common Carrier Coverage" section is interpreted. Both provisions offer $100,000 in coverage, one for accidents generally and the other for a subset of accidents. It appears, though, that the schedule is designed to permit an agent to fill in different coverage amounts for different clients, "Twenty-Four Hour Accident Coverage" being the broadest category of coverage and "Private Passenger/Pedestrian Coverage" and "Common Carrier Coverage" being mutually exclusive subsets of that

Second, the title of the relevant section--"Common Carrier Coverage"--would be an inaccurate description of the coverage described in the section. Typically, a "'[c]ommon carrier' designates a person engaged in transporting people or things from place to place for hire, and who holds himself out to the <u>public</u> to do so for so long as he has room to carry the cargo tendered to him." <u>Railroad Comm'n of Texas v. United Parcel Service, Inc.</u>, 614 S.W.2d 903, 910 (Tex. Civ. App.--Austin 1981, writ ref'd n.r.e) (emphasis in original). Appellant urges us to disregard this section title in favor of a general reading of the operative language which ignores the public/private distinction connoted by the term "Common Carrier." But appellee included the term "Common Carrier" in the section title precisely because it wanted to describe the nature of the coverage offered in that section. We therefore read the operative language of the "Common Carrier Coverage" section in light of its title.

Finally, the term "land transport vehicle" itself can be read in the manner urged by the title of the section and the structure of the contract as a whole. While in its most common usage, the noun "transport" means the act of "carry[ing], mov[ing], or convey[ing] from one place to another," The Random House College Dictionary 1397 (Rev. ed. 1982), it is also defined as "a system of public travel," <u>id.</u> In the absence of other limiting language we would probably be inclined to adhere to the more general

category.

definition.  But given the section title and the effect of a broad reading on the "Private Passenger/Pedestrian Coverage" section, the latter definition is the more appropriate one.

Accordingly, we AFFIRM the judgment of the district court.